PER CURIAM:
Claimant brought this action for vehicle damage which occurred on Piedmont Road near the intersection with Route 60 in Huntington as a result of negligent maintenance of the road. Piedmont Road is a road maintained by respondent in Wayne County. The Court is of the opinion to deny this claim for the reasons more folly stated below.
The incident giving rise to this claim occurred on March 2, 1998, sometime after 2:00 a.m. On the night in question, claimant was en route to Ashland, Kentucky, to perform some tile work at Aldi Food Stores. Since claimant had to be at work at 5:00 a.m., he and a co-worker, Jerty Elkins, left his house at 2:00 a.m. Claimant was traveling at about twenty-five to thirty-five miles per hour and using his headlights because it was foggy with light rain falling. Claimant had not traveled this route to Ashland, Kentucky, prior to the night of this accident.
When claimant and his co-worker left his house in Saint Albans, Kanawha County, in his 1981 Ford F-150 pick-up truck, they proceeded towards Huntington where they drove to Route 52 and exited at the Chesapeake, Ohio, exit. The Chesapeake, Ohio, exit is the last exit before entering Ohio. There, they turned at the first left, Madison Avenue. The road was flat and there were street lights visible. The speed limit in this area was thirty miles per hour. Claimant passed a Rich Oil Station on his right, which is about one-thousand feet from the accident scene. Camden Park is across the street. At this point, visibility became difficult. According to claimant, he only had a view of about twenty to thirty feet. He applied his brakes thirty feet before the curve, but the road “just disappeared.” Claimant missed a turn, his vehicle went off the road, and it landed in a twelve foot ravine.
When claimant’s truck landed in the ravine, it was halfway on its side, but some stumps and logs caught it, keeping it from overturning. Two tires burst, all of the shocks burst, the running boards were broken off and the vehicle suffered other mechanical problems. The ceramic tile that was to be used at the claimant and co-worker’s job site in Ashland, Kentucky, also was damaged. Neither claimant nor his co-worker was physically injured in the accident. The vehicle damage was extensive, but the vehicle damage did not exceed the value of the vehicle. The resulting vehicle damage was $3,017.65.
Immediately after the accident, claimant and his co-worker exited the truck and proceeded to the Rich Oil Station to telephone for help. Claimant’s co-worker called the Sheriff, but there was no response. Claimant then called for a tow. truck. In addition, claimant phoned Aldi Food Stores in Ashland, Kentucky, to cancel his job which was given to someone else. The truck was towed to a local garage for temporary repairs allowing claimant to drive the truck to return home. Subsequently, the oil drain plug fell *94 out of the oil pan and oil leaked from the engine. This leakage severely damaged the engine which resulted in the engine having to be rebuilt. Meanwhile, claimant purchased a 1975 Ford truck. Later, the damaged truck was sold.
Claimant alleges that the road was maintained in a negligent manner and presented a hazard to the driving public primarily because there were no warning signs or reduce speed signs for the curve where claimant drove off the roadway. Also, there was an unprotected embankment. There was some semblance of a former guardrail on the side of the road where the incident occurred which claimant contends should have been maintained. If .all of these conditions had been addressed by respondent, claimant is of the opinion that he would not have had an accident on March 2, 1998.
Respondent asserts that it was not negligent in the maintenance of Piedmont Road. There had been no prior claims or complaints regarding the curve in the road at the scene of claimant’s accident. There was a 30 mile per hour speed limit sign approximately two tenths of a mile prior to the curve on Piedmont Road.
The well established principle of law in West Virginia is that the State is neither an insurer nor a guarantor of the safety of motorist upon its roads. Adkins vs. Sims, 130 W.Va. 645; 46 S.E.2d 81 (1947). As the Adkins Court stated:
“[w]e do not think the failure of the state road commissioner to provide guard rails and road markers . . . constitutes negligence of any character, and particularly no such negligence as would create a moral obligation on the part of the State to pay damages for injury . . . assumed to have occurred through such failure, and as the proximate cause thereof. The very nature of the obligation of the State, in respect to the construction and maintenance of its highways, precludes the idea that its failure to exercise discretion in favor of a particular location over another, on whether it should provide guard rails,... or danger signals at that point, is an act of negligence. Certainly, it must be known, as a matter of common information, that places of danger on our highways exist at innumerable points, particularly on our secondary roads. ... In the very nature of things, the road commissioner must be permitted a discretion as to where the public money, entrusted to him for road purposes, should be expended, and at what points guard rails, danger signals ... should be provided, and the honest exercise of that discretion cannot be negligence. . . . Certainly, where the road commissioner is vested with discretion in matters of this *95 character, it cannot be negligence that he selects for safety measures one point over another_” Id., 130 W.Va. at 660, 661; 46 S.E.2d at 88, 89.[1]
The photographic evidence and testimony adduced at the June 24, 1999, hearing indicated that the curve on Piedmont Road was clearly a sharp curve. Respondent allowed the semblance of guardrail at the edge of the embankment to fall into disrepair. In addition, there was no indication to motorists that a potentially hazardous situation could be ahead. Notwithstanding that this conduct on the part of respondent may have been ill-advised, the Court is reluctant, in light of Adkins v. Sims, to conclude that respondent was negligent in that regard. The Court concludes that claimant was negligent in the operation of his vehicle. The photographic evidence indicated that there were skid marks from claimant’s vehicle about the length of the vehicle itself. These skid marks indicate to the Court that claimant’s vehicle was traveling at a rate of speed too fast for the road. This situation is exacerbated by the fact that there were inclement weather conditions on the day in question. Thus, the Court is of the belief that claimant did not exercise reasonable care in operating his vehicle under the then existing weather conditions.
In view of the foregoing, the Court is of the opinion to and does deny this claim.
Claim disallowed.

 The Division of Highways, formerly the office of State Road Commissioner, was transferred to, and administratively attached to, the Department of Transportation by the Executive Reorganization Act of 1989. See W.Va. Code § 17-2A-1 &5F-2-1.